IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned September 20, 2012

## KATHRYN A. DUKE v. HAROLD W. DUKE, III

**Appeal from the Chancery Court for Williamson County**
**No. 33519      James G. Martin, III, Judge**

**No. M2012-01964-COA-10B-CV - Filed October 2, 2012**

The father in this post-divorce action has filed a petition for recusal appeal seeking an interlocutory appeal as of right pursuant to Tennessee Supreme Court Rule 10B from the trial court's denial of his August 13, 2012, motion for recusal. We have reviewed the petition pursuant to the de novo standard of review as required by Tennessee Supreme Court Rule 10B § 2.06, and we affirm the trial court's decision to deny the motion for recusal.

**Tenn. R. App. P. 3 Appeal as of Right  / Tenn. Sup. Ct. R. 10B;**
**Judgment of the Chancery Court Affirmed**

FRANK CLEMENT, JR., J. delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. PATRICIA J. COTTRELL, P.J., M.S., filed a separate opinion concurring in part and dissenting in part.

Jacqueline B. Dixon, James L. Weatherly, Jr., Nashville, Tennessee, for the appellant, Harold W. Duke, III.

Helen Sfikas Rogers, Nashville, Tennessee, for the appellee, Kathryn A. Duke.

### OPINION

The parties, Kathryn A. Duke and Harold W. Duke, III, were divorced by a final decree entered on July 15, 2009. On appeal, this court affirmed the divorce decree in part and remanded the case for further proceedings. *Duke v. Duke*, No. 2009-02401-COA-R3-CV, 2012 WL 1971144 (Tenn. Ct. App. Jun. 1, 2012). While the appeal was pending, however, both parties filed post-divorce pleadings for contempt and for modification of the parenting plan.

On January 1, 2010, the case was assigned to the current trial judge. On January 20, 2010, the father filed a motion for recusal of the trial judge asserting, in part, that a former law partner of the judge had briefly represented the mother while the judge was still a partner in 2005. The court heard the motion for recusal on January 22, 2010. The trial court denied the motion for recusal from the bench, but no order reflecting the decision was entered. The trial court also informed Dr. Duke (hereinafter "Father") that the court would grant him permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9, but Father did not seek an interlocutory appeal and no order granting an interlocutory appeal was entered.

The post divorce petitions were tried over several days beginning in May of 2011 and ending in March of 2012. Father filed a motion to reopen the proof based on newly discovered evidence on June 29, 2012, and a renewed motion to reopen the proof on July 13, 2012. The trial court denied the renewed motion to reopen the proof on August 3, 2012.

On August 13, 2012, Father filed a "Renewed Motion for Recusal" (hereinafter "the August 2012 motion"). The August 2012 motion relied on the same grounds as the 2010 motion for recusal but unlike the initial motion, the August 2012 motion relied on the new Rules of Judicial Conduct, which became effective July 1, 2012, this court's opinion in the first appeal of this matter filed June 1, 2012, and the trial court's post-divorce rulings, which Father asserts support "not only an appearance of impropriety but also an appearance of bias and prejudice that could reasonably be linked to the prior attorney client relationship between the judge, his former law firm and Ms. Duke." That purported relationship was the basis for the initial motion to recuse.

The trial court entered an order on August 31, 2012, denying the August 13, 2012 motion and setting forth with particularity the reasons for the denial in accordance with Tennessee Supreme Court Rule 10B §1.03. Father timely filed this petition for recusal appeal pursuant to Rule 10B § 2.02 on September 4, 2012.

### TENNESSEE RULE OF APPELLATE PROCEDURE 10B APPEALS

Pursuant to Tennessee Supreme Court Rule 10B § 2.01, a party is entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal. The appeal is effected by filing a "petition for recusal appeal" with the appropriate appellate court.[1] Tenn. Sup. Ct. R. 10B § 2.02. If this court, based on the petition and supporting documents, determines that no answer is needed, we may act summarily on the appeal. Tenn. Sup. Ct. R. 10B § 2.05. Otherwise, this court may order an

---

[1] In civil cases other than worker's compensation cases, this court is the appropriate appellate court.

answer and may also order further briefing by the parties. *Id*. In addition, Rule10B § 2.06 grants this court the discretion to decide the appeal without oral argument.

Having reviewed the petition and supporting documents, we have determined that an answer, additional briefing, and oral argument are unnecessary, and have elected to act summarily on the appeal in accordance with Tennessee Supreme Court Rule 10B sections 2.05 and 2.06.

## ISSUES

In a Tennessee Supreme Court Rule 10B appeal, the only order we may review is the trial court's order that denies a motion to recuse. Pursuant to the rule, we may not review the correctness or merits of the trial court's other rulings nor may we consider the denial of motions for recusal that were filed before July 1, 2012. *See* Tenn. R. Sup. Ct. R. 10B. Accordingly, in this case, the only order we shall review is the August 2012 order, not the 2010 order, and we review the denial of a motion for recusal under a de novo standard of review.[2] Tenn. Sup. Ct. R. 10B § 2.06.

## ANALYSIS

The trial judge denied Father's first motion for recusal in January of 2010. Father did not pursue an interlocutory appeal or otherwise seek reconsideration of that decision for over two years. In that time, the issues surrounding the divorce were decided, the final decree was appealed, and this court filed our opinion regarding the first appeal in June 2012.

After the divorce was final, other disputes arose and various motions and petitions were filed, including a 124-page "Fourth Amended Petition for Civil/Criminal Contempt and For Other Relief," filed by Ms. Duke (hereinafter "Mother"). Those post-divorce matters have been tried, but it does not appear that an order has been entered. Thereafter, Father filed a motion to reopen the proof; it was denied.

Soon after the trial of the post-divorce matters and the denial of Father's motion to reopen the proof, Father filed the August 13, 2012 motion for recusal at issue here. The motion stated that Father "renews his motion" for recusal, and in the petition filed with this court, Father concedes that "the primary basis for recusal remained unchanged throughout

---

[2]Prior to the adoption of Tenn. Supreme Court Rule 10B, effective July 1, 2012, the appellate courts reviewed recusal decisions pursuant to the more deferential abuse of discretion standard. *See State v. Hester*, 324 S.W.3d 1 (Tenn. 2010).

the proceedings with only the scope of issues and remedies sought in the post-divorce trial changing."

TENNESSEE SUPREME COURT RULE 10B

Tennessee Supreme Court Rule 10B § 2.01 was adopted by Supreme Court order, which went into effect on July 1, 2012. The order implementing Rule 10B states that the rule shall have *prospective application* only, "applying to all motions for disqualification or recusal filed on or after that date." *Id*. Father's previous motion for recusal was filed on January 20, 2010, more than two years prior to the effective date of the rule. Therefore, we shall not review the trial court's denial of the 2010 motion for recusal. Rule 10B does, however, apply to Father's appeal of the denial of his August 13, 2012 motion for recusal, but only to the extent the alleged grounds relied upon exist, or persist, and are under the purview of both the new Rules of Judicial Conduct and Tennessee Supreme Court Rule 10B.

We acknowledge the dissent maintains the position that Tennessee Supreme Court Rule 10B does not apply to the August 2012 motion. As the dissent states, this is because the August 2012 motion is merely a "renewed motion for recusal" of the 2010 motion that was denied on August 31, 2012, from which no interlocutory or extraordinary appeal was taken.[3] The dissent posits that the refiling of a motion on the same grounds for which it was denied prior to July 1, 2012, does not bring it within the purview of Rule 10B because a party cannot make that Rule applicable to a motion for recusal filed prior to July 1, 2012, merely by filing a renewed motion after July 1, 2012, stating the same grounds. We agree with the dissent to the extent that we shall not retroactively apply Rule 10B to the 2010 motion for recusal. The foregoing notwithstanding, Rule 10B does apply to a motion for recusal filed after July 1, 2012, even if the motion relies on the same grounds relied upon for recusal filed prior to July 1, 2012; provided the alleged grounds persist, they come under the purview of the new Rules of Judicial Conduct and Tennessee Supreme Court Rule 10B, and there has been no prior appeal on those grounds.

Further, to refuse to consider the present appeal would defeat the purpose of Rule 10B, including the prospective application of the rule. For example, a circumstance in which a party filed a motion for recusal in 2010 on the ground the trial judge had, at that time, a

---

[3] The 2010 order was an interlocutory order; therefore, the trial court maintained jurisdiction over the matter and as a consequence, the trial court could have, *sua sponte* or upon motion, reversed its 2010 decision and granted recusal. As a result Father did not have a right of appeal at that time, only the right to seek an interlocutory or extraordinary appeal. Tennessee Rule of Appellate Procedure 9 is an Interlocutory Appeal for which there is a ten day window to perfect the appeal after the entry of the trial court's order granting the interlocutory appeal; Tennessee Rule of Appellate Procedure 10 is an Extraordinary Appeal for which there is no bright line deadline within which the appeal must be perfected.

business relationship with the adverse party that constituted a conflict of interest, which the movant asserted required recusal, and the trial judge denied that motion in 2010 and no appeal of that decision was taken. Thereafter, in August of 2012, after Rule 10B went into effect, the same party filed a motion for recusal asserting that the trial judge continued to be in the same business relationship with the adverse party, which required recusal from any further involvement in the case. Under these circumstances, we would consider the issues raised, as we are doing in this appeal, however, we would only apply the rule prospectively as it pertains to the case moving forward.

It is also important to recognize that a party may lose the right to challenge a judge's impartiality by engaging in strategic conduct. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). Further, our "[c]ourts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" *Id*. (quoting *Holmes v. Eason*, 76 Tenn. 754 (Tenn. 1882)); *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988). "Thus, recusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality." *Id*. (internal citations omitted). In this case, Father filed a motion for recusal in 2010 on the same grounds relied upon here but under the then existing rule, which afforded the trial judge broad discretion to deny the motion. We also note that the standard of review in existence at that time was substantially more deferential to the decision of the trial court than it is now under Rule 10B. For these reasons, we conclude that Father is not engaging in impermissible strategic conduct and he is not experimenting with the court by renewing the motion for recusal at the present time.

As a final comment on the issue of timeliness of this appeal and whether there has been a waiver by Father of his right to appeal the denial of his motion for recusal, we find it very significant that Tennessee Supreme Court Rule 10B expressly provides:

> If the trial court judge enters an order denying a motion for the judge's disqualification or recusal, or for determination of constitutional or statutory incompetence, an accelerated interlocutory appeal as of right lies from the order. *The failure to pursue an accelerated interlocutory appeal, however, does not constitute a waiver of the right to raise any issue concerning the trial court's ruling on the motion in an appeal as of right at the conclusion of the case.* The accelerated interlocutory appeal or an appeal as of right at the conclusion of the case shall be the exclusive methods for seeking appellate review of any issue concerning the trial court's denial of a motion filed pursuant to this Rule.

Tenn. S. Ct. R. 10B § 2.01 (emphasis added).

For the reasons stated above, we shall consider the issues raised as they are based upon grounds that allegedly exist presently.

GROUNDS FOR RECUSAL

The primary basis upon which Father seeks recusal is that the trial judge and Cathy Speers, a lawyer who worked in the same law firm, Stites & Harbison, met with Mother one time on May 24, 2006 for approximately one hour each to discuss possibly representing her in an anticipated divorce proceeding. A second basis upon which recusal is sought is that the trial judge represented Jennifer Lineberger in 2006 in her divorce case and Ms. Lineberger is currently Father's paramour and she "played a big role" in Father and Mother's divorce. Father also asserts that the trial court's most recent rulings on post-divorce matters support an appearance of impropriety and bias.

Father's motion for recusal relies upon two provision of Rule 2.11 of the Rules of Judicial Conduct, which state:

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or party's lawyer, or personal knowledge of facts that are in dispute in the proceedings.
. . . .

(6) The judge:

(a) served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer i the matter during such association; . . .

We start our analysis of the grounds for recusal understanding that a party challenging the impartiality of a judge "must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned." *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002) (quoting *Davis v. Dep't of Emp't Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)).

Father asserts that the trial court's most recent rulings on the post-divorce matters support an appearance of impropriety and bias; we find this assertion insufficient for recusal as a matter of law. "A trial judge's adverse rulings are not usually sufficient to establish bias." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008). "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001).

With regard to the other grounds asserted by Father, Mother testified during the August 2012 hearing on the motion for recusal stating that the trial judge had only one conference with her, which lasted one hour, on May 24, 2006, and at the conclusion of their meeting he advised her he was too busy to represent her but he introduced her to his partner Cathy Speers. Mother and Ms. Speers then met for one hour but Mother did not engage Ms. Speers to represent her. Mother stated that she did not provide any documents to the trial judge or Ms. Speers and that she never spoke with the trial judge after her one meeting with him on May 24, 2006. She also testified that she never met with Ms. Speers again and that the last time she spoke with Ms. Speers about representing her was August of 2006,[3] but Mother never engaged Ms. Speers to represent her.[4] Other than the one-hour meeting that occurred on May 24, 2006, the trial judge had no communication with Mother and there is no evidence that he had any direct or indirect involvement in any of Mother's legal affairs.

As for the contention the meeting with Ms. Speers may justify recusal, it is undisputed that the trial judge was a partner at Stites & Harbison when attorney Cathy Speers met with Mother in May 2006; however, that fact alone does not constitute grounds for recusal. "The fact that a judge was once professionally associated with a lawyer for one of the parties in a case is not, without more, grounds for disqualification." *Kinard*, 986 S.W.2d at 228 (citing ABA Comm. on Ethics and Professional Responsibility, Informal Op. 87–1524 (1987)). In the absence of other disqualifying circumstances, our courts have consistently concluded that a judge is not disqualified when the lawyer for one of the parties is a former law partner,

---

[3]Mother spoke by phone with Ms. Speers once after August 2006, which was in December 2006, to question why she received a bill from Sites & Harbison. Mother explained the call stating, "In December I got a bill - - a late bill, and I called their office and said I have had no contact with her since August of '06, why would I be getting a bill, and it was a misprint."

[4]Mother engaged attorney Helen Sfikas Rogers. Ms. Rogers represented Mother throughout the divorce proceedings, including the first appeal, and Ms. Rogers continues to represent her in post-divorce proceedings.

associate, or co-counsel. *Id.* Furthermore, when a motion for disqualification is based on a judge's former association with a lawyer,

> the totality of the circumstances should be examined, including the following factors: (1) the nature and extent of the prior association, (2) the length of time since the association was terminated, (3) the possibility that the judge might continue to benefit from the relationship, and (4) the existence of personal or social relationships springing from the professional relationship.

*Kinard*, 986 S.W.2d at 229.

The record in this appeal is insufficient to establish that the trial judge's former association with Ms. Speers and Ms. Speers' one-hour meeting with Mother justifies recusal. As for the trial judge's one-hour meeting with Mother on May 24, 2006, the trial judge stated, "I don't recognize Ms. Duke. I don't remember the conversations that occurred. I have no knowledge of the facts of the matters alleged in the petitions before the Court, . . ."

Beyond the above facts, there are few and relatively insignificant facts to be considered for purposes of the August 2012 recusal motion. The facts that are worthy of consideration are addressed by the trial judge in his detailed statement from the bench following the August 2012 motion for recusal.

> THE COURT: Well, I have entered a number of orders referring cases to Judge Easter for reassignment based on recusal, and I do it pretty quickly because I don't want the appearance of this Court to be tarnished in any way. On the other hand, I don't want to just jump out of every case that somebody comes in and raises a concern about because I do have a responsibility to the docket that I have and otherwise Judge Beal will labor under a burden that he will never be able to lift.
>
> I think the facts in this case are pretty clear in terms of the Court's involvement. The record from Stites & Harbison indicates that I apparently spent an hour and a half with Ms. Duke on May the 24th of 2005.
>
> And then the other concern that has been raised was the fact that I represented Ms. Lineberger on a case that was concluded in September of 2006. The allegations in the current petition that relate to Ms. Lineberger involve an allegation of contempt in that Dr. Duke had Ms. Lineberger in the presence of the children in violation of the Court order that Judge Easter entered, and that was after I was involved with Ms. Lineberger anyway in September of 2006.

And then the other allegation is that the children were apparently told that Ms. Lineberger or her private investigator killed the dog is I think the two ways her names comes up in this proceedings.

The canon says - - this is Rule 10 of Canon 3 (E) (1). It says that a judge shall disqualify himself or herself in the proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to, (a), the judge has a personal bias or prejudice concerning a party or a party's lawyer or personal knowledge of disputed evidentiary facts concerning the proceeding.

In this case I have no bias or prejudice concerning Dr. Duke, Ms. Duke, or either of the lawyers in this case. The record should reflect that in the 34 and a half years that I've practiced, I've had numerous cases with Ms. Dixon, Mr. Weatherly, who is seated at counsel table with Ms. Dixon, and Ms. Rogers, and I find all of those lawyers to be highly competent, ethical, and I have no - - no feelings but good feelings about any of them. So for what it's worth in our record I feel very positive about the lawyers involved in this case and I have no bias against the parties or prejudice in any way.

Then it says concerning evidentiary facts in dispute. There's nothing involved in any of these proceedings that are currently before the Court of which I have any knowledge. I mean, I have no knowledge of these alleged contempts, and anything that involved Ms. Lineberger is long after my relationship with her ended in the fall of 2006.

Then it says the judge should recuse himself or herself where the judge served as a lawyer in the matter in controversy or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter or the judge has been a material witness concerning it, meaning the matter.

The record in this case reflects that my partner, Cathy Speers, apparently met with Ms. Lineberger - - I mean Ms. Duke on May the 19th, 2005, and then I was brought in to a conference six days or five days later on May the 24th, but all of the issues relating to whatever was discussed during that conference should have been resolved in the divorce.

So when I look at part (E) of this canon, I don't think it applies and requires this Court to recuse itself.

Then I look at the standard as discussed by the Supreme Court, and I am looking at the Bean versus Bailey case. That's a 2009 case. In - - and the Court makes it clear, if the judge has any doubt as to his or her ability to preside impartially or if a person of ordinary prudence in the judge's position - - so it's a subjective and an objective test that the Court is supposed to apply - - then would there be a reasonable basis for questioning the judge's impartiality.

As I've stated on this record, I don't recognize Ms. Duke. I don't remember the conversations that occurred. I have no knowledge of the facts of the matters alleged in the petitions before the Court, and I have no doubt in my own mind that I can hear this case impartially and rule on it.

The question then is would an objective standard, meaning a person of ordinary prudence, judging these facts draw a different conclusion, and I don't believe they would. My involvement with Ms. Duke was limited and my involvement with Ms. Lineberger ended in September 2006.

So applying the canon, as well as the interpretation given to that canon by the Tennessee Supreme Court, the Court respectfully declines to recuse itself and overrules your motion.[5]

We have reviewed the grounds for recusal pursuant to the de novo standard under Tennessee Supreme Court Rule 10B and find that Father has failed to establish that the trial court's impartiality may reasonably be questioned or that the trial court has a bias or prejudice concerning Father. Accordingly, we affirm the denial of the motion for recusal.

## IN CONCLUSION

We affirm the trial court's decision to deny the motion for recusal. This case is remanded to the trial court for further proceedings consistent with this opinion. Harold W. Duke, III is taxed with the costs for which execution, if necessary, may issue.

_____
FRANK G. CLEMENT JR., JUDGE

---

[5]In his ruling from the bench, the trial judge referenced "May 24, 2005" and "May the 19th of 2005" as the dates he or Ms. Speers met with Mother. Mother, however, testified that both meetings occurred on one day, May 24, 2006. Mother's testimony appears to be correct because the attorneys had Stites & Harbison's billing, which they used to refresh Mother's testimony concerning the day, month and year she met with the trial judge and Ms. Speers or spoke by phone with Ms. Speers.