IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 21, 2024

## ROBERT HOWARD v. MONICA HOWARD

**Appeal from the Circuit Court for Sullivan County**
**No. C44125   Suzanne S. Cook, Judge**

_____

### No. E2024-00897-COA-T10B-CV

_____

This is an accelerated interlocutory appeal as of right pursuant to Tennessee Supreme Court Rule 10B section 2.02 from the trial court's denial of a motion for recusal. Having reviewed the petition for recusal appeal, we affirm the trial court's decision to deny the motion for recusal.

**Tenn. Sup. Ct. R. 10B Accelerated Interlocutory Appeal;**
**Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Robert Howard, Blountville, Tennessee, pro se.

James R. Cook, II, Johnson City, Tennessee, for the appellee, Monica Howard.

### OPINION

On June 20, 2024, Robert Mason Howard ("Petitioner") filed a petition for recusal appeal seeking to overturn the decision by Judge Suzanne S. Cook denying his motion for recusal.[1] This appeal arises from a contentious divorce action with children in the Law Court for Sullivan County, at Kingsport, Tennessee.

_____

[1] On June 28, 2024, Petitioner filed a motion to amend his Rule 10B Petition for Recusal Appeal, referred to in his motion as his Brief, to show "additional good cause since the original petition has occurred." Because we are limited to considering the facts presented to the trial court in the motion for recusal, we denied the motion. *See Malone v. Malone*, No. W2023-00843-COA-T10B-CV, 2023 WL 8457951, at *14 (Tenn. Ct. App. Dec. 6, 2023) ("Pursuant to Tennessee Supreme Court Rule 10B, our review in this appeal is limited to the trial court's denial of the recusal motion.") (citing *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *6 n.3 (Tenn. Ct. App. Feb. 11, 2014)).

Tennessee Supreme Court Rule 10B governs appeals from orders denying motions to recuse. *See Elseroad v. Cook*, 553 S.W.3d 460, 467 (Tenn. Ct. App. 2018). Pursuant to section 2.01 of Rule 10B, a party is entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal. The appeal is perfected by filing a petition for recusal appeal with the appropriate appellate court. *See* Tenn. Sup. Ct. R. 10B, § 2.02.

Our standard of review in a Rule 10B appeal is de novo. *See* Tenn. Sup. Ct. R. 10B, § 2.01. "'De novo' is defined as 'anew, afresh, a second time.'" *Simms Elec., Inc. v. Roberson Assocs., Inc.*, No. 01-A-01-9011-CV-00407, 1991 WL 44279, at *2 (Tenn. Ct. App. Apr. 3, 1991) (quoting *Black's Law Dictionary*, 392 (5th ed. 1979)).

If we determine, after reviewing the petition and supporting documents, that no answer is needed, we may act summarily on the appeal. Tenn. Sup. Ct. R. 10B, § 2.05. Otherwise, this court must order an answer and may also order further briefing by the parties. *Id.* Tennessee Supreme Court Rule 10B section 2.06 also grants this court the discretion to decide the appeal without oral argument. Following a review of the petition for recusal appeal, we have determined that neither an answer, additional briefing, nor oral argument is necessary, and we elect to act summarily on the appeal in accordance with Rule 10B sections 2.05 and 2.06.

## ANALYSIS

Section 1.01 of Rule 10B specifies the manner by which a motion for recusal is to be presented to the trial court:

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed written motion. The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

We will not consider additional allegations of bias raised on appeal when not included in the initial motion for recusal filed in the trial court. *See Malone*, 2023 WL 8457951, at *14; *McKenzie*, 2014 WL 575908, at *6 n.3. Stated another way, the allegations must first be presented to the trial judge in a motion for recusal. *See id.*

"The party seeking recusal bears the burden of proof." *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016) (citing *Williams ex rel. Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015)); *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015). Specifically, "'[a] party challenging the impartiality of a judge "must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned."'" *Id.* (quoting *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012)). "A motion to recuse should be granted when judges have any doubt about their ability to preside impartially in a case or when 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Boren v. Hill Boren, PC*, 557 S.W.3d 542, 548 (Tenn. Ct. App. 2017) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001)).

"Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994) (citing *Riva Ridge Apartments v. Robert G. Fisher Co.*, 745 P.2d 1034, 1037 (Colo. App. 1987)); *see also State v. Reid*, 313 S.W.3d 792, 816 (Tenn. 2006). "In other words, 'if the bias is alleged to stem from events occurring in the course of the litigation, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial.'" *Malone*, WL 8457951, at *12 (quoting *McKenzie*, 2014 WL 575908, at *3).

Petitioner's motion for recusal begins with a preliminary statement that constitutes a request for relief. The preliminary statement reads:

> Petitioner respectfully requests the Honorable Suzanne Cook to recuse herself from the above matter and any other matter involving the Petitioner.
>
> Petitioner also respectfully requests Her Honor make a declaration about any and all relationships outside the Courtroom regarding James R Cook II, Esq., and/or Page and Cook Law Firm as it relates to political and/or campaign interactions, e.g. campaign associate/manager, etc.
>
> Petitioner asserts that while each of the below actions individually constitute good cause for recusal, together they provide overwhelming good cause.

Immediately following the foregoing request for relief, the motion provides a statement of facts that reads:[2]

---

[2] It appears that the statement of facts was sworn to by Petitioner, although the attested copy was not included in the filing with this court. For judicial economy, we presume that the affidavit or declaration attesting to the facts set forth in the statement of facts was properly executed and filed with the trial court.

1. On June 4th, 2024, during trial, Your Honor reviewed Income and Expense Statements and heard associated testimony from Both Parties in the above matter. In considering Pendente Lite support and despite clear and unequivocal evidence that Father has no ability to pay, Your Honor awarded the Respondent $2,500 in Pendente Lite Support.

2. The Respondent requested on the stand $600 a month in alimony/pendente lite.

3. Mother testified that she had forgone a full-time job offer of $22/hr at FedEx where she had worked part-time due to it not being convenient for her schedule.

4. Overwhelming Evidence showed that the Pendente Lite Order created a gap in the Petitioner's ability to pay of approximately $4,500 post tax dollars per month or $68,354 in yearly pre-tax earnings at a nominal 21% tax rate - almost exactly half the overall pretax earnings of Petitioner. Said another way, Petitioner would have to make, pre-tax, approximately $192,000 a year to cover his bills and make Court Ordered payments. Petitioner testified and evidence verified the Petitioner makes approximately $125,000 per year pre-tax.

5. After awarding $2,500 in Pendente Lite support and in the very next sentence, Your Honor ordered additional mediation for the Parties regarding the Divorce pending matter.

6. Prior to hearing the Pendente Lite, Your Honor found Petitioner in Contempt of Court for failing to pay child support he testified to and demonstrated via evidence that he did not have the ability to pay. Petitioner testified that he was currently carrying $1,300 in bills historically paid by Respondent while she lived in the marital home. Petitioner also indicated that his attorney relayed to him he was paying child support "in kind" via a car and insurance payment of $750 for and that there was no Order requiring him to make the support payments. Your Honor provided an Order signed by Chancellor Priester in February of 2022 containing instructions to pay the support. Petitioner to date has never received a copy of the Order and only has an Order marked "Proposed" next to an unmarked "Ordered" box.

7. For the above Contempt and after Petitioner stated he did not have the ability to pay, Your Honor ordered him to Jail.

8. Petitioner's Mother had to provide $8,500 to remove her son from Jail for what amounts to following his Attorney's instructions and an inability to pay. Petitioner currently has $10,540 in cash available to him as of June 7th, 2024,

with a payment for the Mortgage ($2,600), his Truck ($900), Mother's car ($600) and a Loan ($500) currently due and other bills due prior to the next pay day. Said another way, Petitioner has approximately $5,940 dollars in cash to his name until the next payday — all of which would need to go to Mother to cover the now ordered Pendente Lite.

9. Brough[t] up at Trial was the fact that there are pending Motions to Modify which Your Honor refuses to hear — Stating that current Motions to Modify are Stayed until the associated DNN [Dependency and Neglect] Petition in Juvenile [Court] is adjudicated.

10. Juvenile Court in the associated DNN matter has a Scheduling Order which indicates Motions to Modify should be filed with and heard by the Sullivan County Circuit Court. Essentially, Father has no access for Motions to Modify in any Court.

11. Petitioner will write until his hands fall off, if it must be from Jail or via stone and chisel, to protect his Children's Safety and his Rights. Father crafts this Motion as his wrists ache from the handcuffs used to transport him to Jail. Unfortunately, Mother and the Judicial System, NOT FATHER, have created the current need for extensive litigation as evidenced from her text messages from June of last year on Father's Day and through the host of incorrect actions by the Judiciary, e.g. motioning away legitimate cases via inappropriate oral motions to dismiss, pulling Father to Court with no notice whatsoever, running statutory schemes on Father to try to strip him of an Appeal, filing frivolous Abusive Civil Action Litigant Claims, etc. etc. Father remains, as he has the entire Marriage, in a defensive posture. Mother has physically assaulted Father, verbally abused Father for years, emotionally abused Father and the Children, accused Father of infidelity, and coercively threatened suicide as the evidence in this matter will show. Mother, "won't stop fighting," and "will stop at nothing," and her motives to gain more than "Tennessee's stupid 50/50 custody" are crystal clear.

[excerpt from text exchange copied here]

12. In addition and as relayed in other filings in this matter, Her Honor is aware that I've been threatened with my life by Respondent's friends in relation to these matters. And if previously unknow[n], Her Honor now knows.

[excerpts from group texts copied here]

13. This Court is currently fully supporting, and beyond reasonableness, a Respondent with a long history of mental illness to which she admitted:

[illegible email copied here]

The email from Respondent reads, "I read the article, just like many articles I've read in the past. I too have read many articles about insecurities, about fear of abandonment, about OCD, about PTSD, about depression, about post-partum, all things I suffer from. I've read about it, I've practiced yoga to ease my mind, I've gone numerous counseling sessions and been on a number of medications since I was in third grade!...

14. Based on Father's experience in three different Courts and with three different Judges, He has very little faith left in the Sullivan County Judicial System at this point.

It is readily apparent from reviewing the above factual allegations that the principal basis upon which Petitioner seeks the trial judge's recusal is that the judge has made numerous adverse rulings against him. The trial court came to the same conclusion. Specifically, in the trial court's order denying the motion for recusal, the court noted that "[Petitioner's] recusal motion primarily and substantially expresses his disagreement with the Court's ruling(s) from the hearing that occurred on June 4, 2024, and the Order entered on June 10, 2024, reflecting the same."

While Petitioner's preliminary statement at the beginning of his motion for recusal requests that the trial court make a declaration about any relationships outside the courtroom with James R Cook II, Esq., and/or the Page and Cook Law Firm "as it relates to political and/or campaign interactions, e.g. campaign associate/manager, etc.", Petitioner provides no factual basis for such a declaration. Significantly, the only "facts" set forth in Petitioner's motion for recusal pertain to rulings by the trial court made during the litigation that, Petitioner contends, reveal bias against him.

Because a motion for recusal must state, with specificity, all factual and legal grounds supporting disqualification of the judge, *see* Section 1.01 of Rule 10B, we shall limit our analysis to Petitioner's contentions that the specified adverse rulings reveal that Judge Cook is biased against him.

"[T]he mere fact that a judge has ruled adversely to a party. . . is not grounds for recusal." *Bd. of Pro. Resp. of Sup. Ct. of Tenn. v. Slavin*, 145 S.W.3d 538, 548 (Tenn. 2004) (quoting *Davis*, 38 S.W.3d at 564–65). Even rulings that are "erroneous, numerous and continuous, do not, without more, justify disqualification." *Boren*, 557 S.W.3d at 549. The foregoing notwithstanding, we acknowledge that, in rare situations, "the cumulative effect of the 'repeated misapplication of fundamental, rudimentary legal principles that favor[] [one party] substantively and procedurally' can be the basis for recusal." *Id.* at 551 (quoting *Krohn v. Krohn*, No. M2015-01280-COA-T10B-CV, 2015 WL 5772549, at *7 (Tenn. Ct. App. Sept. 22, 2015)).

- 6 -

Here, however, Petitioner has failed to present an argument, supported by relevant authority and facts, to show that any of the challenged rulings by Judge Cook are the result of misapplications of fundamental, rudimentary legal principles. In fact, he has failed to present a meritorious argument to establish that any of the challenged rulings are even erroneous. Therefore, we find no basis upon which to conclude that a person of ordinary prudence in Judge Cook's position, knowing all of the facts known to her, would find a reasonable basis for questioning her impartiality. *See Davis*, 38 S.W.3d at 564; Tenn. Sup. Ct. R. 10, RJC 2.11(A).

For the foregoing reasons, we affirm the decision of the trial court to deny the motion for recusal.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Petitioner, Robert Howard.

_____
FRANK G. CLEMENT JR., P.J., M.S.